ATTORNEY-GENERAL, EX REL. WILLIAM BLISS et al.,

*v.*

LINDEN CEMETERY ASSOCIATION et al.

[Submitted April 8th, 1919.   Decided April 21st, 1919.]

The fair value of lands of a cemetery company is properly ascertained by subtracting from their gross value the expenses of future development of the lands for cemetery purposes, and treating the association as a going concern, making no deduction to cover possible losses if the cemetery should not continue to be operated as a cemetery.

On exceptions to master's report.

*Messrs. Vail & McLean,* for the claimant.

*Mr. Abram H. Cornish,* for the receiver.

BACKES, V. C.

This matter is before the court on cross-exceptions to the master's report. The master was directed "to ascertain and report the fair value of the land of the said Linden Cemetery Association as of the date of the receivership; and ten per cent. of said ascertained value without interest, in accordance with the views expressed in the decree of the said court of errors and appeals therein." That decree, which followed the opinion of the court of errors and appeals, reported in *85 N. J. Eq. 501*, directed the court of chancery "to ascertain what will be a reasonable sum to be paid the grantor, or his assigns, for services and profit on the purchase and sale of said property, and their value to the grantee. less any credits to which the grantee is entitled. And that when such sum is ascertained it shall be treated as unpaid purchase price of the land until extinguished by payment in gross or by percentage from the price of lots, as provided in said covenant, which covenant is declared to be extra-statutory solely because the amount to be paid to the grantor was unliquidated." The plan and rule for measuring the claimant's (grantor's) compensation, adopted by this court and approved by the court of errors and appeals, with qualifications, reported in *89 N. J. Eq. 192,* while not incorporated in the reference, guided and controlled the master. The master estimated the value of the land at $519,140.78. He did not report this to be the fair value, but as both parties have treated his calculations and findings as a compliance with the spirit of the order of reference, it is accepted as his appraisement. In arriving at these figures the master estimated the land not suitable for burial purposes at $1,000 per acre (which is not criticised by either party), and the land suitable for burial purposes, based upon past experience, at fifty cents per square foot, the gross amount, after adding thereto the value of land sold, being $863,610.98.

From this sum he deducted $344,470.20, which he estimated would be the cost of the future development of the land for cemetery purposes, leaving the balance of $519,140.78 as his appraisement, upon which he estimated the ten per cent. at $51,914.07. The claimant complains and contends that the ten per cent. should have been calculated upon the gross instead of net value. In other words, ten per cent. on $863,610.98 and not on $519,140.78. I do not see how this position can be maintained in the face of the opinion of the court of errors and appeals reported in *89 N. J. Eq. 192.* When the case was then before me on exceptions to the master's report, I held, in effect, the measure of profit to the claimant to be ten per cent. on a liquidated sum to be ascertained by an appraisement of the land based upon the probable total income from sales. The court of errors and appeals in affirming said: "This seems to be a practical way of disposing of the matter, and we assent to it with two qualifications—the first, that no interest be payable on the unpaid balance, for reasons already stated, and secondly, that the appraisal be made as of the date of the receivership, at which time the original scheme broke down." It seems to me the master has correctly interpreted the views of the court of errors and appeals. The only possible chance the claimant has of realizing on his equities depends entirely upon the prospective use of the land for cemetery purposes, and in appraising its worth as of the time when the receiver was appointed, based upon this prospect, the master very properly took into consideration the estimated cost of developing the enterprise, in the event that it should be revived. The particular grievance is that in the estimate is included the cost of the sale of lots, and the incidental expenses of carrying on the business of the association, and in this respect it is pointed out that under the original scheme the ten per cent. profit was independent of these costs and expenditures. The argument on this point altogether ignores the second qualification of the court of errors and appeals opinion above quoted "that the appraisal be made as of the date of the receivership." The whole theory upon which the appraisal was made rests upon the utilization of the lands for burial purposes, and necessarily the expenses incident to a successful prosecution of

the cemetery enterprise were determining factors in fixing the value as of the time when the scheme broke down. The exceptions will be overruled.

The receiver excepts on the grounds that the appraisal is excessive, in that forty-four and ninety-seven hundredths acres of land suitable for burial purposes should have been appraised at $2,500 per acre instead of at the rate of fifty cents per square foot, the current price of burial lots and plots; and that in determining the value of the property at the date of the receivership, the master "used a speculative value contingent upon the happening of three certain elements—(1) cost of suitable preparation of the ground; (2) the cost of sale, and (3) the continued operation of the cemetery; but failed to deduct from the sum total of such speculative value, the third element necessary to make it up, namely, the continued operation of the cemetery." In view of what has been said by this court, and the court of errors and appeals on the subject, it seems to me that the master applied the correct rule and rightly appraised the lands suitable for cemetery purposes as though they were those of a going concern, after making due allowance, as he did, for the expenses that a going concern would be put to to successfully carry out the project. The plan endorsed by the court of errors and appeals for admeasuring the claimant's profit, of course, implies purely speculative values, as the theory upon which the valuation is based contemplates the sale of the land for burial purposes under the management of a cemetery association, properly conducted, which does not now exist. Unless this comes to pass the claimant will realize nothing or little, for, as has been pointed out in a prior decision, the payment of his claim, or any part of it, is contingent upon the sales prices of the land. Whether the land be sold for burial or other purposes, and whatever price it may bring, only ten per cent. is to be set aside and appropriated to the satisfaction of the claim. The exceptions will be overruled.

In *Attorney-General, ex rel. William Bliss et al.,* v. *Rosedale Cemetery Association* similar exceptions were filed to the master's report. They will be overruled.