Strafford,
Dec. 2, 1941. } No. 3286.

JOHN S. B. DAVIE *v.* ROCHESTER CEMETERY ASSOCIATION.

*Dixon H. Turcott*, for the plaintiff.

*Cooper, Hall & Grimes*, for the defendant.

MARBLE, J.   In order to determine whether a particular organiza-

tion is "charitable" in the sense in which that word is used in a tax-exemption statute, resort must be had "to the accepted doctrine respecting charitable uses," and that institution is charitable the property and funds of which are devoted to such purposes as would support the creation of a valid charitable trust. *In re Vineland &c. Society*, 66 N. J. Eq. 291, 295.

In construing a statute exempting from taxation the property of charitable societies, this court has said: ". . . if an institution is organized and conducted to perform some service of public good or welfare, with no pecuniary profit to its officers or members, and with no restrictions which confine benefits to them, its descriptive character as charitable . . . follows." *Young Women's Christian Ass'n* v. *Portsmouth*, 89 N. H. 40, 43.

The quoted words aptly describe the general purpose and scope of the defendant's activities. The burial of the dead is a matter of public concern (*Tuttle's Petition*, 80 N. H. 36, 39); the members of the association derive no profit from the enterprise, and the benefits of the organization are not restricted to its membership.

The charitable nature of gifts for the upkeep of cemetery lots is recognized in this jurisdiction (*Rollins* v. *Merrill*, 70 N. H. 436, 437), and cemetery corporations as well as the trustees of towns are authorized by statute to hold funds in trust, "to apply the income thereof to the improvement, watering or embellishment of the cemetery, or to the care, preservation or embellishment of any lot or its appurtenances." P. L., c. 55, s. 11.

"If there is wide public advantage in decent care for a single family lot and monument, *a fortiori* there is a social interest in the maintenance of a plot where the dead of a town, city, or county are buried." 2 Bogert, Trusts and Trustees, s. 377, p. 1200. It follows therefore, that a trust for the maintenance of a public cemetery is charitable. *Drury* v. *Sleeper*, 84 N. H. 98, 99, and cases cited; Restatement, Trusts, s. 374, Comment *h*. And a cemetery, though maintained by a private corporation, may fairly be deemed a public burial ground if it "is open, under reasonable regulations, to the use of the public for the burial of the dead." *Starr &c. Ass'n* v. *Association*, 77 Conn. 83, cited with approval in *Brown* v. *Cemetery*, 78 N. H. 387, 388.

The cemetery for the care of which the defendant association was organized is known as the Rochester Cemetery, a brief history of which is contained in one of the documentary exhibits. The following paragraphs are quoted from this history:

"For several years the necessity of having more ample grounds and conveniences for the burial of the dead had been strongly felt by the citizens of Rochester. The old burying ground laid out by the town in the year 1800 had become crowded and was wholly inadequate since the great increase of the town's population to meet the requirements of the people.

"Mr. W. F. Farrington had made a small addition to it which was quickly taken up. During the years 1863-4 the subject of a new ground was much agitated. Once or twice, when there seemed a prospect of accomplishing the object, the hope was disappointed because the people were divided as to the most suitable location. The subject was kept alive, however, by articles which occasionally appeared in the Rochester Courier. . . .

"During the summer of 1864 an earnest endeavor was made by a few individuals to purchase of W. F. Farrington the ground which now forms the new cemetery. Much difficulty was experienced in agreeing upon terms; but finally a bargain was closed and on the 9th of September 1864, Eben G. Wallace and Frank McDuffee took a deed of the land in their own names and advanced the purchase money, in order to secure it for an association when such should be formed. . . . Steps were immediately taken to form an Association under the statutes providing for the forming of voluntary associations.

"Several informal meetings were held for this object at which preliminary measures were adopted. Upon Saturday the fifteenth of October the first legal meeting was held and an organization effected.

. . . "On the afternoon of Sunday October 30 . . . the cemetery was consecrated and dedicated with appropriate religious services upon the ground. All the churches in the village being closed and the congregations and ministers uniting for this purpose. A large concourse of people was gathered together. . . ."

The purpose of the defendant's organization, as stated in the articles of association, is a broad one. It is "to provide, hold and keep in repair suitable grounds and other conveniences for the burial of the dead." Article 4 of its bylaws provides that "Any owner of a burial lot in the cemetery for which the Treasurer has received not less than ten dollars may become a member of the association by being elected at a duly called meeting by a major vote of the members present" and that "Any person may withdraw from membership by signing a written notice to the Clerk."

Article 5 provides that all money received from the sale of lots or other sources "shall be faithfully and exclusively devoted to paying the indebtedness of the Association, making improvements and beautifying the grounds, constructing, furnishing, and keeping in repair a chapel and receiving tomb, and paying such expenses as are incident to the objects of such Association." The article further provides that the treasurer "shall be paid a reasonable compensation for his services and responsibility," but that no other officer of the association shall receive any compensation for performing the duties of his office, it "being understood that the object of the Association is to promote the public interest and not subserve private speculation." Article 6 provides that the treasurer shall receive funds given or bequeathed to the association in trust for the perpetual care of lots.

On this evidence the Rochester Cemetery cannot be deemed a mere private burial ground "undevoted to the use and convenience of the public." *Tuttle's Petition*, 80 N. H. 36, 38. The work of a cemetery association may constitute a public service. *Brown* v. *Cemetery*, 78 N. H. 387, 388; *Tuttle's Petition, supra.* The declared purposes of the defendant association refute the contention that the benefits of the organization are limited to its members, and there is no evidence that the corporation is not being operated in strict conformity to its bylaws and articles of association.

Courts in other jurisdictions have considered the right of cemetery corporations to exemption from the requirements of unemployment compensation acts substantially identical with the act here in force. The plaintiff calls attention to the following cases: *Proprietors &c. Mt. Auburn* v. *Commission*, 305 Mass. 288; *Christgau* v. *Ass'n*, 208 Minn. 263; *Industrial Commission* v. *Ass'n*, 232 Wis. 527.

In the Minnesota and Wisconsin decisions much emphasis is placed upon the essential uniformity of the various state acts and their intimate relation to the Federal Social Security Act. In the Wisconsin case it is said: ". . . numerous references throughout the chapter [Unemployment Compensation Act] and its general context show that in numerous respects the chapter was intended to conform the state law to the Federal Social Security Act in order that full advantage might be taken of the federal act. In the light of . . . [the] legislative history [of the act], we conclude that it is quite evident that the exemptions . . . were deliberately made to conform to those in the Federal Social Security Act; that the Federal Social Security Act adopted this exemption feature from the federal

income tax law; that the federal income tax law does not exempt cemetery corporations as charitable corporations or corporations organized for charitable purposes, but by an exemption applicable specifically to cemetery companies." *Industrial Commission* v. *Ass'n,* 232 Wis. 527, 532.

We are unable to adopt this construction of the provision under review. This provision was included in the original statute (Laws 1935, *c.* 99) enacted by the legislature of this State on May 29, 1935, before the enactment of the Federal Social Security Act on August 14, 1935, and although the Governor was required to declare by proclamation the effective date of the statute "after the passage of the federal legislation imposing a tax for unemployment compensation" (Laws 1935, *c.* 99, *s.* 63), there is nothing in the statute to indicate a legislative intent that the provisions of the contemplated Federal enactment shall govern the interpretation of the employment exclusions contained in the State act.

Nor does the fact that the legislature of 1941 saw fit to exempt cemetery companies in express terms from the requirements of the act mean that such companies were not already exempted under the statute in its original form. "The legislature may enact laws, but may not declare what the law is." *Lisbon Savings Bank &c. Co.* v. *Moulton's Estate, ante,* 477.

It is our conclusion that the defendant is a corporation organized and operated for a charitable purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and that it is therefore entitled to exemption under section 1, *cl.* 1 (4) (f) of the Unemployment Compensation Act.

*Judgment for the defendant.*

All concurred.