This suit arises out of a proceeding brought under the New Jersey Securities Act, R.S. 49:1-11 (Wilentz,Attorney-General, v. Fairland Management Corp., Inc.
(unreported, docket 129/476); affirmed, 130 N.J. Eq. 212;21 Atl. Rep. 2d 733), in which the complainant herein on October 8th, 1940, was appointed receiver and the defendant Vogel herein is one of the defrauded. *Page 258 
Fairland Memorial Park Association, organized under the Rural Cemetery Act, acquired a permit for the operation of a cemetery in North Brunswick, Middlesex County. Title to the cemetery lands was held by Fairland Management Corporation, organized under the General Corporation Act. The receiver's bill seeks to set aside a conveyance to the defendant of 560 cemetery plots, alleging that they were acquired as a result of fraud and breach of the defendant's obligations as a director of Fairland Management Corporation. It is further alleged that at the time of the transfer Fairland Management Corporation was insolvent, and at the hearing that fact was not disputed and adequately established.
The facts appear to be that in 1939 Vogel bought 60 fourgrave plots for $10,000. Fairland Management Corporation by its president, George G. Reining, promised Vogel that the company would repurchase a portion of his holdings at a profit each year. When it failed to do so after one year had passed Vogel wanted to get his money back. In an effort to do so and to make a profit in addition to the one which he had expected to realize from his purchase, Vogel and Reining worked out a transaction which was concluded by a group of papers executed and delivered on August 12th and August 13th, 1940. The deal was that Vogel was to loan Fairland Management Corporation $7,000 and in six months he was to get back $14,000. In addition, his cemetery lots acquired for $10,000 in 1939, were to be repurchased at a profit. To carry out this plan Reining transferred a majority of the stock of Fairland Management Corporation to Vogel on August 12th, and Vogel was elected a director of the company on that day. Under date of August 13th, 1940, the Management Corporation executed a note to Vogel for $6,000 payable six months after date. On the same day, by authorization of the Memorial Park Association, 560 plots in the heart of the cemetery were "sold" to Vogel for $800. Most of these plots contained sixteen graves each. They were located in a section more desirable and more valuable than the location in which Vogel had purchased plots of four graves each at an average price of $166. Vogel on the same day entered into an agreement with Reining by the terms of which Reining *Page 259 
was to purchase the 560 plots within six months for $7,820 and also was to buy back the $10,000 worth of plots purchased by Vogel in 1939, for which Reining was to pay $12,000 or more, depending upon the time when he bought them. The plan was that on the due date of the note Vogel was to receive the $6,000 due thereunder together with $180 in interest. He was also to receive $7,820 for the 560 plots, making a total of $14,000 for his loan of $7,000. The 560 plots were not to be reconveyed to either of the corporations, but to Reining individually, who was thus to be put in the position of acquiring for an infinite fraction of their worth a large block of graves.
From the testimony and exhibits it seems clear that the 560 plots were transferred to Vogel as a form of security. Near the conclusion of the final hearing in this matter, Vogel replying to a question directed to him by his solicitor said: "I offered to return the security, return the stock, return everything I had, providing I could get a lien on the property — that is the property for which I held the deed for the sum of $17,000 or some other legal way of protecting me and I would be happy to turn this all back. The court: You would give everything back if you could get your money. Is that right? The witness: That is right." "Mr. Glauberman: the defendant, Saul Vogel, hereby offers to the complainant to return to him all the properties that were conveyed to him by the cemetery, the ash section as well as the oak section, and he is willing to waive any profit of any interest which he is entitled to by virtue of an agreement entered into between him and the cemetery in which he wishes to have a lien on the property for the amount of $17,000, subject to all the restrictions set forth in the New Jersey Cemetery Act. * * * In the alternative he makes the following offer: he will return to the receiver the security received on August 13th, 1940, consisting of the oak section, as well as the stock and notes, and in return he wishes to have a lien for the sum of $7,000." (Italics mine.) Thus it is not disputed the promissory note and corporate shares of stock were held by Vogel as collateral and the deed for the cemetery plots as a mortgage to secure the repayment of the *Page 260 
money advanced by him. And from the testimony of Mr. Rand on cross-examination, Vogel's attorney at the time of the transaction, it appears that the 560 plots were transferred to Vogel to secure not merely the repayment of his loan but the profit of $7,000 which he was to make on that transaction.
The defendant filed an answer and a counter-claim to impress a lien upon the cemetery plots for $7,000 alleged to have been advanced to the Fairland Management Corporation. The counter-claim in the second paragraph reads that both corporations "were controlled and managed by said George G. Reining" and that "the defendant dealt with the said corporation and the said association and the said Reining as a single entity," and the defendant in his counter-claim refers to all three as the "cemetery." The theory seems to be that the court can at will disregard the separate entities of the two corporations because of Reining's control. Not only does the counter-claimant seek to impress a lien for his alleged loan of $7,000, but in the alternative a lien in the sum of $17,000 on all cemetery plots "conveyed to him at any time."
A cemetery is a charitable trust. Its directors are trustees in charge of the management and operation of a quasi public service corporation. Atlas Fence Co. v. West RidgelawnCemetery, 110 N.J. Eq. 580; 160 Atl. Rep. 688. The lands held by Fairland Management Corporation were dedicated to use as a cemetery. They were held upon trust and Vogel in his capacity of director was not merely a director with the fiduciary duties attached to the directorship of a private non-charitable corporation. Both he and Reining were charged with the duty of maintaining the integrity of the capital of the corporation as a trust fund for the security of creditors and for the benefit of the corporation and those beneficially interested in the charitable trust. Whitfield v. Kern, 122 N.J. Eq. 332;192 Atl. Rep. 48. The transaction complained of by the receiver was fraudulent as to both corporations and was a violation by the defendant of his fiduciary duties. The scheme was one designed to enable Vogel and Reining to profit greatly at the expense of creditors and lot owners, the latter being cestuis que trust. *Page 261 
Treated as a transaction to secure Vogel the conveyance of the 560 plots to him was illegal and void and against public policy as an attempt to mortgage lands dedicated to use as a cemetery. Cemetery lands may not be thus mortgaged. The statute prohibits such a use of cemetery land. R.S. 8:2-11. Such lands are not liable to sale by virtue of any judgment, decree or execution out of any court in this state, R.S. 8:2-29. Reliance is placed by the defendant upon Fidelity-Union Trust Co. v. Union CemeteryAssociation, 102 N.J. Eq. 100; 139 Atl. Rep. 706. In dealing with the right of a promoter to have included in a purchase-money mortgage upon cemetery lands his compensation, Vice-Chancellor Backes declared obiter: "It is not intended to indicate that a cemetery association cannot mortgage its lands to raise funds to promote the enterprise, and to issue negotiable instruments in acknowledgment of the debt, nor to issue a mortgage to secure an existing debt, and to give negotiable paper as evidence, but at most, the capacity, implied by the statute, to mortgage property, as security, is limited to value received for cemetery purposes. * * *" Aside from the fact that the language quoted was obiterdicta, the instant case involves a situation where the evidence discloses that the Vogel money was not used "to promote the enterprise" so far as the cemetery was concerned since the funds never arrived in the coffers of the cemetery, and the transaction was a manipulation by Reining and Vogel (both of whom were directors) in the nature of a speculation to make individual profit. In Atlas Fence Co. v. West Ridgelawn Cemetery, supra, the Court of Errors and Appeals pointed out that the receipts derived from the sale of cemetery lots "belong to the corporation for the purposes stated in the act, and not to the promoters, officers, or other individuals not creditors."
The attempted mortgage was not for purchase-money and so the decisions in this state holding a purchase-money mortgage to be enforceable by sequestration of revenues are not applicable. The precise question presented here has not been passed upon in this state, although there are intimations in Atlas Fence Co. v.West Ridgelawn Cemetery, 118 N.J. Eq. 342; 178 Atl. Rep. 378,
that the mortgaging of its lands is *Page 262 
not an unlimited right of a cemetery association. The question presented has been passed upon in Wolford v. Crystal Lake,44 Minn. 440; 56 N.W. Rep. 56. There the cemetery corporation gave a mortgage to one who had loaned money to the corporation which it used in paying its debts and laying out the cemetery. The Minnesota statute was in many respects comparable to our statutory scheme. Upon grounds of public policy the court held that the mortgage was void. And it is a general rule, as pointed out in the Restatement of the Law of Trusts § 380, that the trustee of a charitable trust cannot properly mortgage trust property unless a power to mortgage is conferred by the terms of the trust. The statute provides a method of financing cemeteries. Thereby the authority to mortgage its lands for purposes other than to secure payment of the purchase price is negatived. Confidence in cemeteries and protection of those interested therein as cestuis que trust, seem to require that such a general authority as is claimed by the defendant be clearly found in the statute. But the legislature has limited cemeteries to the issuance of certificates of interest in the proceeds of sales of plots. R.S. 8:2-8. To accord to the defendant substantial rights of a mortgagee seems to be against the policy of the statute.
Moreover the complaining receiver was appointed under the Securities Act (R.S. 49:1-1) et seq., which provides that property acquired by fraud shall constitute a fund for benefit of those who have been defrauded. For the reasons stated herein it would be inequitable and unconscionable to permit the defendant to enforce a mortgage against the numerous defrauded lot owners and creditors, even to a limited extent. By reason of the fraud, the breach of fiduciary duty, and independently the considerations springing from the fact that a charitable trust is involved, the deed conveying the 560 plots to the defendant will be set aside and the counter-claim will be dismissed. *Page 263