35 N.J. 259 (1961)
173 A.2d 33
ROBERT R. TERWILLIGER, TRADING AS KENNGOTT-TERWILLIGER CO., PLAINTIFF-RESPONDENT,
v.
GRACELAND MEMORIAL PARK ASSOCIATION, A CORPORATION OF THE STATE OF NEW JERSEY, GRACELAND MANAGEMENT CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS, AND HOLLYWOOD MEMORIAL PARK, INC., A CORPORATION OF THE STATE OF NEW JERSEY, ROSEDALE AND LINDEN PARK CEMETERY ASSOCIATION, A CORPORATION OF THE STATE OF NEW JERSEY, ROSEDALE AND LINDEN PARK COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, AND DAVID D. FURMAN, THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
The Supreme Court of New Jersey.
Argued April 24, 1961,
Argued April 25, 1961,
Decided June 30, 1961.
*260 Mr. Howard Stern argued the cause for plaintiff-respondent (Messrs. Hofstra & Hofstra, attorneys).
Mr. Edward J. O'Mara argued the cause for defendants-appellants (Messrs. O'Mara, Schumann, Davis & Lynch, attorneys).
Mr. David Landau, Deputy Attorney General, argued the cause for the Attorney General (Mr. David D. Furman, Attorney General of New Jersey, attorney).
*261 The opinion of the court was delivered by FRANCIS, J.
The defendant Hollywood Memorial Park, Inc., operates a public cemetery in the Township of Union, New Jersey. Defendant Rosedale and Linden Park Company, a corporation, conducts the same kind of cemetery in the City of Linden, New Jersey. Each defendant also engages at its cemetery in the sale of bronze markers or memorials to be installed on the graves of persons buried there. At the behest of plaintiff Robert R. Terwilliger, a local dealer in memorials, the Chancery Division of the Superior Court enjoined defendants from continuing to sell such articles on the ground that the activity is beyond their corporate power and contrary to public policy. 59 N.J. Super. 205 (Ch. Div. 1960). We certified defendants' appeal from the restraint before argument in the Appellate Division.
The cemetery in the Township of Union was established in 1909 when the Union Cemetery Association was incorporated under the Rural Cemetery Act, R.S. 8:1-1 to 22. The land to be used was dedicated as a place of sepulture, and the required permit to operate the cemetery was obtained. N.J.S.A. 8:3-2. Subsequently the Association became involved in financial difficulties which persisted over a long period, and its continued operation became subject to certain decrees of the Court of Chancery. See Fidelity Union Trust Co. v. Union Cemetery Ass'n, 136 N.J. Eq. 15 (Ch. 1944), affirmed o.b. 137 N.J. Eq. 455 (E. & A. 1946).
In July 1937 defendant Hollywood was incorporated under the General Corporation Act, R.S. 14:2-1. In June 1938 it entered into a contract with Union Cemetery Association (this apparently being the reason for Hollywood's organization) to purchase the remaining land which, although dedicated for the purpose, had not yet been actually put to cemetery use by Union. The agreement is not in evidence but enough is revealed by the record to indicate that as part thereof Hollywood undertook to conduct the cemetery subject *262 to a contract Union had with the Township of Union under which a past due and future real property tax liability (imposed on land not yet actually used for burial purposes and so not exempt from taxation) was to be liquidated as lots were sold for interment. Whatever may have been the full scope of the arrangement, it came into question in Fidelity Union Trust Co. v. Union Cemetery Ass'n, supra, and evoked some comments by the Court of Chancery which bear repetition here:
"The contract hereinbefore referred to between it and the Union Cemetery Association was entered into with knowledge of the court's decrees, and is amenable to the court's jurisdiction. [citations omitted] The cemetery lands constitute a trust fund, the terms of which trust are defined by the statute. Hollywood having bought with knowledge of the trust and its terms is bound thereby, and is compelled to account. * * * Hollywood has no cemetery permit and is a corporation organized under the General Corporation Act. * * * It is a selling agent for Union. Here is a situation where Union has not received the full proceeds and allows 90% of the proceeds of sale to be retained by this corporation. This arrangement deprives the certificate holders of their share of the proceeds of sale under the decrees and statute and permits Hollywood to make a profit which it may not do in the operation of a cemetery. [citations omitted] The rights of Hollywood are subject to those of Fidelity Union Trust Company, trustee, and the trustee is entitled to an accounting from Hollywood. Neither the trustee nor the certificate holders are parties to the arrangement described and neither consented thereto. Even if it were true that some of the certificate holders consented thereto, it would be a breach of the statutory trust and against the decrees and it would be the duty of the court to rectify the situation." 136 N.J. Eq., at pp. 27, 28.
Thereafter a final decree was entered which recited:
"That in order to accomplish the object of the dedication of Union's lands for cemetery purposes and to assure the preservation of the cemetery, the rights of bondholders, certificate holders, plot owners and the public, it is necessary that this court assume jurisdiction of the trust resulting from the dedication of said lands and the court does hereby assume jurisdiction for the purpose of preserving the trust and effectuating the plan formulated by this court and hereinafter set forth." *263 Then followed a precise and elaborate plan under which Hollywood was to operate the cemetery and to which the contracts between Hollywood and Union, and Union and the Township of Union, were to be subject. So rigorous was the control that no deed for a cemetery plot could be delivered to a purchaser unless the trustee joined in it. After outlining the plan of operation, the decree also dismissed the petition of Union for instructions as to its contract of June 1938 with Hollywood.
This historical summary makes it plain that Hollywood took over a cemetery created under the Rural Cemetery Act, Title 8, and assumed to operate it as such under the various contracts and Chancery decree, and subject to all of the public policy and trust implications inherent in the statute. No appeal was taken from the decree and Hollywood concedes that the cemetery is still being conducted thereunder. See also Fidelity Union Trust Co. v. Union Cemetery Ass'n, 138 N.J. Eq. 50, 52 (Ch. 1946), affirmed 139 N.J. Eq. 309 (E. & A. 1947).
Rosedale and Linden Park Company was incorporated under the General Corporation Act and succeeded by means of contract to the operation of the cemeteries of Linden Cemetery Association and Rosedale Cemetery Association. The incorporation took place in 1942 for the purpose of acquiring the remaining dedicated land of the associations and of continuing the cemeteries pursuant to that agreement. The instrument is not in the record nor were the details furnished (although this defendant unsuccessfully offered the proof at the hearing). There is no proof that it ever was granted a permit for a burial ground. Cf. George Washington Memorial Park Cemetery Ass'n v. Memorial Development Co., 141 N.J. Eq. 47, 65 (Ch. 1947).
Linden Cemetery Association was organized under the Rural Cemetery Act in 1899 and received a permit to operate a public burial ground. (See Attorney-General ex rel. Bliss v. Linden Cemetery Ass'n, 85 N.J. Eq. 501 (E. & A. 1916).) Subsequently, it ran into monetary troubles. See Bliss v. *264 Linden Cemetery Ass'n, 81 N.J. Eq. 394 (Ch. 1913); Bliss v. Linden Cemetery Ass'n, 83 N.J. Eq. 494 (Ch. 1914), modified sub nom. Attorney-General ex rel. Bliss v. Linden Cemetery Ass'n, 85 N.J. Eq. 501 (E. & A. 1916); Attorney-General ex rel. Bliss v. Linden Cemetery Ass'n, 90 N.J. Eq. 398 (Ch. 1917), modified 89 N.J. Eq. 192 (E. & A. 1918); Attorney-General ex rel. Bliss v. Linden Cemetery Ass'n, 90 N.J. Eq. 400 (Ch. 1919); Attorney-General ex rel. Bliss v. Linden Cemetery Ass'n, 90 N.J. Eq. 404 (Ch. 1919), affirmed sub nom. Bliss v. Linden Cemetery Ass'n, 91 N.J. Eq. 329 (E. & A. 1920). Its financial condition in 1942, when defendant Rosedale and Linden Park Company took over, does not appear.
Rosedale Cemetery Association was also created under the Rural Cemetery Act. The date of origin is not in the record but obviously it was prior to 1906. See Rosedale Cemetery Association v. Linden, 73 N.J.L. 421 (Sup. Ct. 1906). The subsequent history of the Association down to 1942, when defendant assumed control under the contract referred to above, is not shown by the testimony or by any other reported cases.
Thus it is apparent that the cemeteries now under operation and control by defendants came into being originally through the three associations organized and empowered to act by virtue of the Rural Cemetery Act. The lands then dedicated by the associations as burial grounds became indelibly stamped with that purpose. As section 1 of the act says, the associations were incorporated for the "purpose of procuring and holding lands to be used exclusively for a cemetery or place for the burial of the dead." R.S. 8:1-1.
Burial grounds have always been considered as necessary adjuncts of the community. The need stems from spiritual considerations associated with the departed, as well as material considerations relating to the health and welfare of the survivors. Such places have been regarded as hallowed ground and held in reverence from ancient times.
*265 The common need of places of sepulture has resulted in their classification by the judiciary as quasi-public service institutions. Attorney-General ex rel. Bliss v. Linden Cemetery Ass'n, 90 N.J. Eq., at p. 408; Emmerglick v. Vogel, 131 N.J. Eq. 257, 260 (Ch. 1942). A cemetery, although maintained by a private corporation or individual, is a public burial ground if it is open to the use of the public for the interment of the dead. The fact that such use is subject to reasonable regulations imposed by the operator does not alter its character. DiCristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 255 (App. Div. 1957); Parker v. Fidelity Union Trust Co., 2 N.J. Super. 362, 388, 389 (Ch. 1944); Davie v. Rochester Cemetery Ass'n, 91 N.H. 494, 23 A.2d 377 (Sup. Ct. 1941). The law has long been settled in our State that such a cemetery is a charitable trust and its operation for purposes of private profit is offensive to public policy. DiCristofaro v. Laurel Grove Memorial Park, supra. And although the question has never been dealt with specifically in this court, in our judgment the legislative and judicial history of cemetery regulation in this State requires the view that the doctrine is applicable regardless of the type of operator of the cemetery. See Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 404 (1960). Whether the operation should be considered a charitable trust and a quasi-public institution depends upon the nature of the use of the lands, not upon the character of the operator. The criterion is public user for cemetery purposes; not whether ownership or control is in the hands of an individual, a general business corporation, or an incorporated cemetery association. Newark v. Mount Pleasant Cemetery Co., 58 N.J.L. 168, 173 (E. & A. 1895); Moore v. Fairview Mausoleum Co., 39 N.J. Super. 309, 317 (App. Div. 1956); George Washington Memorial Park Cemetery Ass'n v. Memorial Development Co., supra, 141 N.J. Eq., at pp. 66, 67; George Washington Memorial Park Cemetery Ass'n v. Memorial Development Co., 139 N.J. Eq. 280, 286-89 (Ch. 1947); *266 Fidelity Union Trust Co. v. Union Cemetery Ass'n, supra, 136 N.J. Eq., at p. 28; Parker v. Fidelity Union Trust Co., supra, 2 N.J. Super., at pp. 389, 390; Emmerglick v. Vogel, supra, 131 N.J. Eq., at p. 260; Burke v. Gunther, 128 N.J. Eq. 565, 571 (Ch. 1941), affirmed 133 N.J. Eq. 609 (E. & A. 1943); Atlas Fence Co. v. West Ridgelawn Cemetery, 110 N.J. Eq. 580, 591-93 (E. & A. 1932); R.S. 8:2-27; 8:2-36 to 41; and see East Ridgelawn Cemetery v. Winne, 11 N.J. 459, 466-67 (1953). In this connection we agree with the comment of Vice Chancellor Berry in Parker v. Fidelity Union Trust Co., supra:
"It has been suggested in the briefs of some counsel that only a cemetery operated by a cemetery association organized under our statute [meaning Title 8] can be the subject of a charitable use and that Atlas Fence Co. v. West Ridgelawn Cemetery, supra [110 N.J. Eq. 580] so holds; but with this statement I do not agree * * *. There is no magic in corporate entity, and corporate form does not clothe a cemetery with the mantle of charity. `It is the use,' and not the parties who supervise that use, `that affords the test of charity.'" 2 N.J. Super., at pp. 389, 390. (Insertions added)
Defendants rely on West Ridgelawn Cemetery v. State Bd. Tax Appeals, 124 N.J.L. 284 (Sup. Ct. 1940), affirmed o.b. 125 N.J.L. 274 (E. & A. 1940). There a general business corporation was denied tax exemption on burial lots apparently on the ground that it failed to establish the bona fide operation of a public cemetery. Among other things, the former Supreme Court said:
"The rural cemetery act, supra, exempts cemetery lands and property of a cemetery association, however incorporated, but it does not exempt the lands and property of a business association, organized under our general corporation act, which chances to deal, inter alia, in cemetery lots for profit." 124 N.J.L., at p. 288. (Emphasis added.)
In the present case, defendants are operating public cemeteries; they have received and are enjoying tax exemption for that reason. Moreover, as the defendant Hollywood *267 recognizes, under the Chancery judgment by which it is governed, it may not profit on the sale of the lots because "the cemetery lands constitute a trust fund." Fidelity Union Trust Co. v. Union Cemetery Ass'n, supra, 136 N.J. Eq., at p. 28. In any event, the factual situation in West Ridgelawn and the Court's opinion thereon are not so clearly opposed to the result reached by us on the facts and the law pertinent to this case as to indicate the necessity for repudiation of the older case or the recognition of it as controlling.
In Frank v. Clover Leaf Park Cemetery Ass'n, 29 N.J. 193 (1959), we decided that operation of a public cemetery organized under the Rural Cemetery Act and enjoying the special exemptions and tax advantages cannot legally engage in the sale of grave markers or monuments for profit. Such independent business activity was adjudged to be contrary to public policy as well as beyond the statutory authorization to maintain a burial ground. 29 N.J., at p. 203. Since the criterion for determining whether a burial ground is a charitable trust and a quasi-public service institution is public user for that purpose, there would appear to be no sound legal or equitable reason for not applying the same public policy limitation to all such cemetery operators. In this case, the facts that the cemeteries controlled by defendant corporations had their origin in the Rural Cemetery Act, and that they have enjoyed in the past and continue to enjoy the benefits flowing from that act, serve to emphasize the desirability of the broad principle. But such circumstances are matters of degree only; they do not represent elements either necessary to its existence or operating to enlarge or narrow its scope. Judged by the test of user, defendants are conducting public cemeteries and so are subject to all the restrictions which public policy has imposed. See Burke v. Gunther, supra, 128 N.J. Eq., at p. 571.
Defendants point out that their charters under the General Corporation Act specify that one of the objects for which they were being formed was "to manufacture, buy, *268 sell, erect and place all kinds of * * * markers" on graves in their cemeteries. But mere inclusion of a proposed corporate activity in a certificate of incorporation does not bestow legal vitality upon the activity if it is banned by public policy. Accordingly, we hold that defendants were properly enjoined from engaging in the business of selling markers.
The argument just adverted to brings us to the contention that only the Attorney General can inquire into the validity of the existence of a corporation or of a provision of a corporate charter or as to an alleged abuse of powers ostensibly conferred thereby, and that therefore plaintiff has no standing to maintain this action. The trial court questioned whether public cemetery institutions have any right to incorporate under the General Corporation Act. 59 N.J. Super., at p. 216; and see Fairview Heights Cemetery Co. v. Fay, 90 N.J.L. 427, 431 (Sup. Ct. 1917), affirmed o.b. 91 N.J.L. 687 (E. & A. 1918). In view of our broad determination with respect to the right of any cemetery to engage in the sale of markers, it is not necessary to discuss that problem. But, in any event, we do not agree that this action cannot be maintained.
In the actuality of business activity, plaintiff and defendants are competitors in the sale of grave markers. There can be no doubt that defendants' intimate relationship with lot owners and members of the bereaved families gives them a competitive advantage over plaintiff in a locality where they both vie for customers. In view of the general public interest in the operation of cemeteries, the law asks only a slight additional private interest as justification for seeking the remedial services of the court. Whatever may be the requirement in ordinary cases, the combination of public policy considerations and status as a competitor in the locality must be treated as providing adequate standing in this type of controversy. Hudson Bergen County Retail Liquor Stores Ass'n v. Board of Comm'rs, City of Hoboken, 135 N.J.L. 502, 510 (E. & A. 1947); and see Walker v. *269 Stanhope, 23 N.J. 657 (1957); DiCristofaro v. Laurel Grove Memorial Park, supra, 43 N.J. Super., at pp. 253-254.
Furthermore, defendants' argument overlooks another factor. The Attorney General is in the case. He did not institute the action but was drawn in by plaintiff as a defendant. Thereafter, he participated in the proceeding, pressing the thesis put forward by plaintiff  particularly in this court. Defendants suggest that his participation was simply formalistic and acquiescent and not indicative of positive official action seeking enforcement of the public policy of the State with respect to the operation of public cemeteries. It is true that plaintiff held the laboring oar in the Chancery Division. In the nature of things, that course is understandable; but the Attorney General's presentation in this court in support of the plaintiff and the trial court cannot be described as lacking in vigor. On the whole record we are of the opinion that the controversy was properly presented for determination.
For the reasons stated, the judgment of the Chancery Division is affirmed.
For affirmance  Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN  7.
For reversal  None.