The Union Cemetery Association was incorporated November 5th, 1909, under the Rural Cemetery Act. Samuel E. Renner was the promoter and served with others as the first trustees. Renner purchased a farm and a franchise was *Page 17 
procured to operate a cemetery thereon. The land which he purchased he offered to sell to the trustees of the Association and agreed to perform certain acts in connection therewith. The Cemetery Association issued $1,000,000 in bonds in certain denominations at 6% payable semi-annually, the bonds to mature in twenty years, and to be secured by a mortgage on the land and franchise. The offer was accepted and the land and franchise was thereupon conveyed to the trustee of the Association.
Bonds for $500,000 were delivered to the promoter who sold them to the public at varying prices below par. Default having occurred, the Fidelity Union Trust Company, as trustee, was, by the bondholders directed to foreclose the mortgage.
In the foreclosure proceedings the Cemetery Association interposed a number of defenses, one of which was partial failure of consideration. In that proceeding this court found that Renner was entitled to a vendor's lien and that such a lien could find "expression in a mortgage." The mortgage was valid to the extent of the consideration that actually passed to the Association and the amount thereof was referred to a master to be ascertained.Fidelity-Union Trust Co. v. Union Cemetery Association,102 N.J. Eq. 100; 139 Atl. Rep. 706. The master rendered his report to which report exception was taken by bondholders and the Cemetery Association, some of which exceptions were sustained and others modified or overruled. Fidelity Union Trust Co. v.Union Cemetery Association, 104 N.J. Eq. 326;145 Atl. Rep. 537. In a portion of the opinion rendered by Vice-Chancellor Backes he says: "The cemetery association has heretofore sold lots and plots for which it has not accounted. One-half the proceeds with interest is presently payable to the mortgagee and for which it is entitled to a decree, to be executed as inSpear v. Locust Wood Cemetery Co., supra." (72 N.J. Eq. 821.)
Final decree was entered July 3d 1929, in which it was adjudicated that the Cemetery Association owed on the mortgage securing the outstanding bonds the sum of $505,000, for which sum complainant was given "a lien on one-half of the gross proceeds of the sales of the cemetery lots and plots *Page 18 
constituting the land and premises in the complainant's bill of complaint described: and that said sum of $505,000 was and is payable out of one-half of the gross proceeds of the sales of the said cemetery lots and plots received by the said defendant;" that the Cemetery Association had withheld from complainant $168,192.36, which sum was "presently payable with lawful interest thereon calculated from the said 30th day of April, 1929." The decree also provided that execution was not to issue for this sum without special order of the court; the balance of the mortgage debt to be payable out of one-half of the gross proceeds of sale.
On August 3d 1929, an amended final decree was entered which was consented to by the defendant Union Cemetery Association, and various bondholders, and which provided that the decree shall "run for the benefit of all those holders of bonds alleged to be secured by the mortgage in the bill of complaint described, who may avail themselves of the terms of this amended decree, but shall be ineffective as to all other parties to this suit, and such other parties shall continue to be limited by the said decree of July 3d 1929."
The amended final decree found (1) the amount due from the Cemetery Association to be $536,142.57 principal money with legal interest thereon from April 30th, 1929; (2) that this sum with interest is payable "when received by the defendant out of the gross proceeds of the sales of cemetery lots;" (3) "that the said moneys are a lien upon the said proceeds and said cemetery in the manner provided by the Rural Cemetery Act to vendors for the security of the purchase money of land." It further provided for the surrender of the old bonds for cancellation and for the execution and delivery of certificates of indebtedness to the former bondholders, and that if default was made "complainant shall be entitled to the remedies given by the statute concerning Rural Cemeteries, provided that the moneys hereinbefore mentioned shall be made only by sequestration of the proceeds of the sale of cemetery lots and plots constituting the said land and premises or in the same manner by a receiver to be appointed by this court for that purpose and at no time by levy, execution and sale of the said land." *Page 19 
After the entry of the amended decree the old bonds were surrendered and certificates of indebtedness accepted in lieu thereof. The Cemetery Association functioned, set up books which it procured to be regularly audited by H. Braverman Co., copies of which audits were furnished by the Association to the trustee and it made payments under the decree. Some payments were made on account of principal and regular payments were made on account of interest.
The Union Cemetery Association was in possession and control of all the property encumbered by the mortgage until 1938. In the ordinary course of the business it sold cemetery lots and plots and paid the trustee one-half of the gross proceeds of the sale of such lots and plots.
In June, 1938, the Union Cemetery Association entered into an agreement with Hollywood Memorial Park, Inc., a corporation of this state, whereby it agreed to sell to Hollywood Memorial Park, Inc., its unembellished lands lying on the west side of Stuyvesant Avenue consisting of about seventy-five acres. In that agreement the amended final decree in this court in which the Fidelity Union Trust Company as trustee was complainant and the Union Cemetery Association and others were defendants, and in which the amount of the indebtedness of the Cemetery Association to the beneficiaries of said decree was established to be $536,142.57 with legal interest thereon from April 30th, 1929, is expressly referred to at length and in considerable detail. In both the final decree and the amended final decree leave was reserved to the parties to apply to the court for further directions as may be deemed proper or become necessary to enforce the performance of such decrees.
Sometime in the year 1942 the Cemetery Association conceived the notion that the payments theretofore made and which it caused to be entered on its books as interest, and which payments were so certified and by its own accountant so carried on its books and records, and which the trustee had disbursed and credited as interest on the certificates in the column provided therefor to the knowledge of the Cemetery Association, should now be credited on principal, and in conformity with this idea notified the Fidelity Union Trust *Page 20 
Company, trustee, to endorse such payments on the certificates of indebtedness as follows: "In payment of principal and/or interest as may later be determined."
A number of certificate holders having refused to accept checks from the trustee coupled with this endorsement, the Fidelity Union Trust Company as trustee now petitions the court for instructions and advice (a) whether the rights of the trustee are superior to the rights of Hollywood Memorial Park, Inc., under the aforementioned agreement between it and the Union Cemetery Association, and whether the trustee is entitled to one-half of the gross proceeds of sale made by Hollywood Memorial Park, Inc., rather than the moneys paid by Hollywood Memorial Park, Inc., to Union Cemetery Association pursuant to said agreement; (b) whether the trustee's rights are affected by any consent certificate holders may have given to the agreement between the Union Cemetery Association and Hollywood Memorial Park, Inc.; (c) whether the trustee is entitled to all or only part of the moneys paid by Hollywood Memorial Park, Inc., to the Union Cemetery Association under said agreement, and if only to part of such moneys, what part; (d) whether the moneys heretofore paid by the Union Cemetery Association to the trustee and turned over by it to holders of certificates of indebtedness has been properly applied on account of interest, and whether the payments made subsequent to June, 1942, with the request that the certificates be endorsed as heretofore mentioned should likewise be applied on account of interest and the certificates of indebtedness endorsed accordingly, or whether such certificates shall be endorsed as requested by Union Cemetery Association; (e) whether the endorsements heretofore made by the trustee as requested by said Union Cemetery Association constitute a waiver by the certificate holders who have received moneys from your petitioners to such endorsements.
And the Union Cemetery Association having likewise sought instructions by petition now before the court prays that it may be instructed (a) whether the sum of $254,072.19 paid by the Union Cemetery Association to the trustee should be first applied on the principal amount of the decree or on *Page 21 
the interest accruing thereon, and whether interest is payable on the principal sum of said decree or only on the sum of $137,049.79; (b) whether the Cemetery Association may withhold from future payments to the trustee the sum of $10,849.15 which it overpaid to the trustee from the moneys received from the Hollywood Memorial Park, Inc., in excess of the requirements of said decree; (c) whether the term "gross proceeds" as used in the final and amended decrees means "total sales" or the proceeds after deduction of cash discounts, commissions, and perpetual care receipts, and if the words "gross proceeds" be held to mean the proceeds after payment of cash discounts, commissions and perpetual care, then that the court instruct petitioner whether the Cemetery Association may withhold from future payments to the trustee the aggregate amounts of such discounts, commissions, and amounts received for perpetual care, which it did not deduct from the aforesaid sum of $254,072.19 paid to the trustee; (d) that an accounting may be had to determine the amount presently due on said decree, and (e) that it be decreed that the payments in future to the trustee from the sale of cemetery lands be reduced, in order to put petitioner in possession of sufficient income to develop the whole, or a portion of the undeveloped cemetery lands, so as to make it salable for burial purposes, and thus enabling petitioner to satisfy the decree.
The two decrees differ in several respects. The amended final decree found owing to the trustee $536,142.57 principal with legal interest from April 30th, 1929. The final decree found $505,000 principal due, of which $137,049.79 with interest of $31,142.57 was due, making a total of $168,192.36 immediately due and payable with interest on that sum. How the principal sum of $536,142.57 was arrived at in the amended final decree can readily be determined. Add to the principal sum of $505,000 found to be due in the final decree of July 3d 1929, the sum of $31,142.57 found to be due by the final decree as interest on the sum of $137,049.79 found to be improperly withheld, and you find the total of $536,142.57, the principal sum set forth in the amended final decree. The decrees also differ as to the time of payment. *Page 22 
The amended final decree provides for the payment of the principal sum of $536,142.57 payable out of the proceeds of sale of land when received by the defendant; the final decree adjudges $168,192.36 with interest from April 30th, 1929, immediately due and payable. The final decree did not provide for interest on the sum of $505,000, but did provide for interest from April 30th, 1929, on the sum of $168,192.36, while the amended final decree provides for payment of interest on the sum of $536,142.57 from April 30th, 1929. The final decree provided that execution for the sum of $168,192.36 with interest shall not issue without special order. The amended final decree provided that in the event of default the complainant was entitled to the remedies given by the Rural Cemetery Act, namely, sequestration of the proceeds of sale of lots or in the same manner by receiver appointed by the court and at no time by levy, execution and sale. Again, the final decree gave the complainant a lien on one-half of the gross proceeds of the sale of cemetery lots and provided for payment out of one-half of such gross proceeds, while the amended final decree gave the trustee a lien on the gross proceeds of sale and does not limit payment out of one-half of the gross proceeds, but provides that the sum of $536,142.57 with the interest accruing thereon is payable when received by the defendant out of the gross proceeds. The final decree did not give a lien to the complainant on the cemetery lands, but the amended final decree gives such lien to complainant on the land and premises in its bill of complaint described.
The comparison thus made of the two decrees impels me to the conclusion that the parties in interest on both sides of the controversy arrived at an understanding to compose their differences, and by consenting to the amended final decree before the right of appeal expired gave up their right of appeal, and thus the Cemetery Association settled and postponed its debt of $168,192.36 immediately due and payable. Here then is consideration in the legal sense of benefit and detriment to the parties to support the bargain. There is nothing in the Rural Cemetery Act that prohibits a cemetery association from gaining the advantages which it gained by *Page 23 
the amended final decree by agreeing to pay interest on a portion of the principal found to be due which did not bear interest by the terms of the final decree, and the contention of counsel for the Union Cemetery Association that a cemetery association has not the power to agree to pay interest as part of the consideration for the detention of money due from it is not supported by the decisions of the courts of this state. InBliss v. Linden Cemetery Association, 83 N.J. Eq. 494;91 Atl. Rep. 304, modified on other grounds, 85 N.J. Eq. 501;96 Atl. Rep. 1001, the court said:
"* * * It was argued that inasmuch as there appeared to be no express power granted to cemetery associations to borrow money, such borrowing could not take place lawfully, and if it did take place, it was ultra vires, and therefore void. This contention, however, is not in accordance with the authorities. The right to borrow money to carry on the objects and purposes of the corporation is implied from the authority to do business as a corporation. It was supposed on the argument that there was a difference between the ordinary business corporation and a cemetery corporation in this respect; but no difference is recognized in the leading case decided by our Court of Errors and Appeals in 1886. Fifth Ward Savings Bank v. First NationalBank, 48 N.J. Law 513. There Mr. Justice Depue holds that every corporation created for transacting business, unless restrained by its charter, or some statute, has, as a necessary incident, the power of incurring debts in the course of its legitimate business, and of making and endorsing negotiable paper in payment of such debt. See, also, Lucas v. Pitney, 27 N.J. Law 221;National Bank v. Young, 41 N.J. Eq. 531; Hackettstown ads.Swackhamer, 37 N.J. Law 191. So long as the borrowing of money is for the legitimate purposes of the association the act isintra vires, and therefore valid, but the argument against these certificates is foreclosed by the Cemetery Act itself, which recognizes the fact that a cemetery company may contract debts, and in section 16 it provides a drastic method by which such a corporation can be compelled to pay debts contracted by it out of its profits. If it could not contract debts there would be no need of any method of collecting *Page 24 
debts from it because there could be none to collect. The implication of power, therefore, seems to be complete. These certificates must stand as debts or obligations of the association for the amounts respectively advanced thereon by the original purchasers thereof. * * *"
In Dennis v. Glenwood Cemetery, 96 N.J. Eq. 399;130 Atl. Rep. 373, interest was allowed on bonds issued by the cemetery in the decree adjudging the amount due on such bonds. In AtlasFence Co. v. West Ridgelawn Cemetery, 119 N.J. Eq. 552;182 Atl. Rep. 902, it was held that the trustee was entitled to receive the fair value of the property conveyed to the cemetery at the time of the conveyance with interest. So, in Burke v.Gunther, 128 N.J. Eq. 565; 17 Atl. Rep. 2d 481; affirmed,133 N.J. Eq. 609; 33 Atl. Rep. 2d 817, interest was allowed on the amount found to be due from the date of the issuance of the bonds to the date of payment. Neither do I find any ambiguity in the meaning of the amended final decree in requiring the payment of interest, and the attempt of the Cemetery Association to apply payments heretofore made on account of interest as payments on account of principal is not justified.
It appears from the evidence and exhibits in the cause and from the conduct of the parties that the amended final decree was thoroughly understood, for after the decree was entered, the Cemetery Association prepared certificates of indebtedness and furnished them to the trustee pursuant to a resolution which it adopted January 3d 1930, in which certificates the Cemetery Association certified to the indebtedness found due from it "with legal interest thereon from May 1st, 1929, is payable, as provided for by said Decree." "This certificate is issued pursuant to said Decree which authorizes and directs the issuing of certificates of indebtedness not exceeding in the aggregate $536,142.57 of principal moneys." These certificates set forth one column for endorsement of the payment of principal, and another column for the endorsement of the payment of interest. The first payment subsequent to the entry of the decree was made pursuant to a resolution adopted by the Cemetery Association October 10th, 1929, which resolution recites that cash collections from sales of lots and plots *Page 25 
and single graves from May 1st to June 30th, 1929, amounted to $8,693.75; that one-half thereof amounts to $4,346.88, and that interest at 6% for the period mentioned on the amount named in the amended final decree $536,142.57 is $5,376.11, "and whereas it seems desirable at this time that payment of the last mentioned sum ($5,376.11) should be made at this time, irrespective of the fact that one-half of the cash collections aforesaid amounts only to $4,346.88 — it appearing that the funds of the Cemetery Association will permit such payment to be made; and Whereas it has been suggested to the Committee that in addition there shall be paid the sum of $142.57 on account of the sum named in said decree ($536,142.57); so that hereafter it will be possible to deal with a round sum in making the necessary calculations in connection with said decree;" c.
Moreover, it cannot be said as seems to be contended by the Cemetery Association, that the amended final decree because it is a consent decree does not have the conclusiveness of a decree entered as a result of litigation by the parties and an adjudication by the court. "While a consent decree partakes of the nature of both a contract and a decree, it is not strictly a judicial decree, but rather in the nature of a contract entered into with the solemn sanction of the court. A consent decree has been defined as an agreement of the parties under the sanction of the court as to what the decision shall be." 30 Corp. Jur.Secundum, § 678. It is not material to the conclusiveness of a decree, whether it was obtained by consent or by a decision of the court, upon the legal principles involved in the controversy.Gifford, Adm'r v. Thorn, 9 N.J. Eq. 702, 722. A consent decree can only be set aside by consent. Town of Bristol v.Bristol and Warren Waterworks, 35 Atl. Rep. 884.
In Gifford, Adm'r, v. Thorn, supra, in speaking of a decree entered by consent in the Court of Chancery of New York, we held: "So far as regards the conclusive effect of the decree of the Court of Chancery of New York, the whole inquiry is whether Elizabeth Hait was properly before that court or not. Upon the record it appears that she was. She appeared by her solicitor. He consented to the decree. The *Page 26 
decree is valid upon its face. To avoid its conclusive operation, the complainant must show that the solicitor had no authority to appear for her. The presumption is in favor of his authority. * * * Nor is it a material point of inquiry whether the solicitor exceeded his authority, or departed from the instructions of his client. If he was the solicitor, the party was in court, and the decree is binding." In the matter now before me it is not contended that the solicitor who consented to the decree was not the solicitor who appeared in all of the proceedings.
In Willis v. Willis, 99 N.J. Eq. 486; 133 Atl. Rep. 529,
Vice-Chancellor Leaming had before him a decree which was consented to as follows: "I hereby consent to the entry of the filing of the within decree. S. Rusling Leap, Solicitor of Defendant." Speaking of such decree he said: "If this endorsement should be given the force to render the decree a consent decree as distinguished from a decree in invitum, it raises the additional question as to the extent to which a consent decree should be considered conclusive, since authorities are to be found to the effect that a consent decree is not strictly a judicial decree, but is rather in the nature of a contract entered into with the solemn sanction of the court.
"But the question is not open for further consideration in this court, since in Oertel v. Oertel, supra (92 N.J. Eq. 327), the maintenance decree there declared conclusive as to the desertion is specifically referred to as a consent decree made on an issue which was not tried." This holding by Vice-Chancellor Leaming was affirmed, 101 N.J. Eq. 312; 137 Atl. Rep. 920.
As heretofore noted, the trustee in the final decree was given a lien on one-half of the gross proceeds and the amount found due was to be paid out of one-half of the gross proceeds of the sale of cemetery lots. The amended final decree fixes the "sum of $536,142.57 with the interest accruing thereon is payable when received by the defendant out of the gross proceeds of the sales of cemetery lots and plots * * * and that the said moneys are a lien upon the said proceeds and said cemetery in the manner provided by the Rural Cemetery Act to vendors for the security of the purchase *Page 27 
money of land; * * * and that said defendant shall set aside the said moneys of said gross proceeds of sale as soon as such gross proceeds shall be received, and apply the same semi-annually as aforesaid to the payment of the moneys payable to the said complainant under this decree until such moneys shall have been fully paid."
The Rural Cemetery Act (R.S. 8:2-11) does not limit vendors to one-half of the gross proceeds. It provides that "At leastone-half of the proceeds of all sales of plots or lots * * * shall be first appropriated to the payment of the purchase money of the lands acquired by the association, until the whole thereof is paid. The residue shall be used for the preservation, improvement and embellishment of the cemetery grounds of the association, and the avenues and roads leading thereto and to defray the incidental expenses of the cemetery establishment. * * *" (Italics mine.)
The Cemetery Association in the sale of lots and plots has allowed purchasers a 5% discount for cash paid, undertakers 10% selling commission, and set aside 10% of sales-price for perpetual care. Since sometime in January, 1938, the Association deducted perpetual care payments, but not commissions, and since January, 1943, deducted selling commissions. It contends that the certificate holders are entitled to only one-half of the "proceeds of sale after allowance or deduction of the selling commissions and the perpetual care," which contention is resisted by the trustee and the certificate holders and properly so, for there is no warrant under the statute or the amended final decree for such deductions.
The term "gross proceeds" in the amended final decree and final decree instead of the term "proceeds" is ample to indicate that in calculating the portion of the proceeds payable to the trustee, no deductions are to be made for a perpetual care fund or commissions. Certainly if such deductions as are claimed to be permitted by the Cemetery Association were allowed, the term "gross proceeds" would have to be construed to mean net proceeds of sale.
Now, as to Hollywood Memorial Park, Inc. The contract hereinbefore referred to between it and the Union Cemetery Association was entered into with knowledge of the court's *Page 28 
decrees, and is amenable to the court's jurisdiction. FidelityUnion Trust Co. v. Union Cemetery Association, 134 N.J. Eq. 254; 35 Atl. Rep. 2d 888; affirmed, 134 N.J. Eq. 539;36 Atl. Rep. 2d 400. The cemetery lands constitute a trust fund, the terms of which trust are defined by the statute. Hollywood having bought with knowledge of the trust and its terms is bound thereby, and compelled to account. Atlas Fence Co. v.West Ridgelawn Cemetery, supra. Under its agreement, Hollywood is to pay Union a graduated percentage of sales amounting to only 10% of such sales. The land which it agreed to buy at the time of the agreement was in the rough and had never been used for burial purposes. According to the testimony, Hollywood sold from October, 1938, to October 31st, 1942, lots for burial purposes in the amount of $1,150,000 of which approximately $800,000 has been paid for in cash, the balance being represented in accounts receivable. Out of this sum only $82,093.30 has been paid by Hollywood to Union, and one-half of this last mentioned sum has been turned over to the complainant. Unpaid taxes, which taxes were required to be paid under the agreement of sale, amount to $36,000. Hollywood has no cemetery permit and is a corporation organized under the General Corporation Act. It is a selling agent for Union. Here is a situation where Union has not received the full proceeds and allows 90% of the proceeds of sale to be retained by this corporation. This arrangement deprives the certificate holders of their share of the proceeds of sale under the decrees and statute and permits Hollywood to make a profit which it may not do in the operation of a cemetery. Burke v.Gunther, supra; Emmerglick v. Vogel, 131 N.J. Eq. 257;24 Atl. Rep. 2d 861. The rights of Hollywood are subject to those of the Fidelity Union Trust Company, trustee, and the trustee is entitled to an accounting from Hollywood. Neither the trustee nor the certificate holders are parties to the arrangement described and neither consented thereto. Even if it were true that some of the certificate holders consented thereto, it would be in breach of the statutory trust and against the decrees and it would be the duty of the court to rectify the situation. MacKenzie v.Trustees *Page 29 of Presbytery of Jersey City, 67 N.J. Eq. 652;61 Atl. Rep. 1027. Hollywood therefore is accountable to the complainant and the certificate holders to the extent of 50% of the proceeds of sales made by it.
It is contended by Union Cemetery Association that because the Attorney-General was not served with subpoena in the foreclosure suit, the Attorney-General was not before the court, and the amended final decree therefore is void.
On March 2d 1927, Vice-Chancellor Backes advised an order amending the prayer of the bill for process by adding thereto the name of "Edward L. Katzenbach, as Attorney-General of the State of New Jersey." That order provided that a true, but uncertified copy of the bill of complaint with its amendment and a copy of the testimony taken be served upon the Attorney-General, and that he have ten days from the date of service upon him in which to file an answer to the bill. The Attorney-General on March 2d 1927, acknowledged service of a copy of the bill of complaint, a copy of the order of March 2d 1927, amending the bill, and a copy of the transcript of the testimony. All of this occurred more than two years prior to the entry of the final decree and the amended decree. Thus, the Attorney-General was brought in as effectively as if he had been originally named as a party. Daniell in his treatise, 1 Chancery Pleading Practice, at p.473, says: "In the first place, if the Attorney-General, upon being served with a copy of the bill, does not appear, no personal process issues against him to compel him so to do; * * *." "When the Attorney-General, as an officer of the crown, is made a defendant, the bill, instead of praying process against him, prays that he may answer it upon being attended with a copy.Story's Eq. Pl., § 44, note." American Dock and Improvement Co.
v. Trustees of Public Schools (Court of Errors and Appeals),35 N.J. Eq. 181, 253; Woulfe v. Associated Realties Corp.,130 N.J. Eq. 519, 526; 23 Atl. Rep. 2d 399. The contention of the solicitor for the Cemetery Association that the Attorney-General was not brought in by proper process, and that therefore the decree is void is not tenable.
Finally, there is the question whether the complainant-trustee's *Page 30 
rights are affected by an agreement entered into between certain of the certificate holders and the Cemetery Association respecting a reduction of interest from six to three per cent. That agreement provides that the decrees of the Court of Chancery hereinbefore referred to shall be fully complied with and carried out. It provides that if as a result of compliance with the decrees, and during the life of the contract with Hollywood there shall be paid to the signers a sum of money which shall equal the total principal indebtedness due on their certificates with interest at three per cent. to be computed from January 1st, 1938, the signers (certificate holders) will release and discharge the Union Cemetery Association of all interest heretofore accrued and owing up to January 1st, 1938, as well as all interest in excess of three per cent. per annum which may hereafter accrue under the terms of said decrees and certificates of indebtedness from and after January 1st, 1938. The agreement is quite lengthy, and in another paragraph provides that it is not to be construed as a modification of the decrees or as a consent, approval or ratification on the part of the certificate holders who signed the same of the contract between the Union Cemetery Association and Hollywood Memorial Park, Inc., or as an assumption by any of the undersigned of any of the obligations therein contained. This agreement, of course, does not affect any of the rights of the complaining trustee who was not a party thereto.
Counsel for the Fidelity Union Trust Company, trustee, as well as counsel for the Union Cemetery Association, in their respective briefs agree that any question under this agreement can only arise if and when the full amount of the decree with interest at 3% has been fully paid, and that that time is very remote and so far distant in the future that no action on the part of the court at present seems desirable to construe the meaning thereof, if construction of that agreement is at all necessary.
An order in conformity with the conclusions herein reached will be advised when presented. *Page 31