# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-2651

DENNIS M. O'BRIEN, APPELLANT,

V.

ROBERT L. WILKIE,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided May 4, 2018)

*Christopher F. Attig*, of Little Rock, Arkansas, was on the brief for the appellant.

*Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; *Christopher W. Wallace*, Deputy Chief Counsel; and *Julia A. Turner*, Senior Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, GREENBERG, and MEREDITH, *Judges*.

MEREDITH, *Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed a dissenting opinion.

MEREDITH, *Judge*: The appellant, Dennis M. O'Brien, through counsel appeals a May 11, 2016, Board of Veterans' Appeals (Board) decision that denied entitlement to dependency compensation for a dependent child based on legal guardianship.[1] Record (R.) at 1-28. This appeal

---

[1] The Board dismissed the appellant's motions for revision of a December 1967 VA rating decision based on clear and unmistakable error, finding that the appellant had not raised valid allegations of clear and unmistakable error. R. at 9-12. The Board denied entitlement to an effective date for the award of benefits for diabetes mellitus earlier than October 6, 2008. R. at 13-16. In his briefs, the appellant raises no arguments related to these matters, and the Court therefore finds that he has abandoned his appeal of these issues. Accordingly, the Court will dismiss the appeal as to the abandoned issues. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc). The Board granted the appellant's request to reopen a previously denied claim for benefits for a skin disability. R. at 6-8. This is a favorable factual finding that the Court may not disturb. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007); *see also Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (per curiam order) ("This Court's jurisdiction is confined to the review of final Board . . . decisions which are adverse to a claimant."). Finally, the Board remanded the appellant's claims for benefits for a bilateral eye disability, hypertension, gastroparesis, bilateral upper extremity peripheral neuropathy, and a skin disability; his requests for increased disability ratings for duodenal ulcer with gastroesophageal reflux disease, left and right carpal tunnel syndrome, post-traumatic stress disorder, diabetes mellitus, coronary artery disease, and obstructive sleep apnea; and his requests for earlier effective dates for the awards of benefits for coronary artery disease and obstructive sleep apnea. R. at 17-26. Those matters are not before the Court at this time. *See Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order) (a Board remand "does not represent a final decision over which this Court has jurisdiction"); *Hampton v. Gober*, 10 Vet.App. 481, 483 (1997) (claims remanded by the Board may not be reviewed by the Court).

is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

On March 22, 2018, the matter was referred to a panel of the Court to determine the meaning of "dependents" in section 1115, title 38, U.S. Code; specifically, whether that term includes children only as defined in 38 U.S.C. § 101(4)(A), or whether it encompasses any child who lives with and is actually dependent on the veteran. For the following reasons, the Court will affirm the Board's decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Air Force from September 1963 to June 1967. R. at 2999. He has numerous service-connected disabilities and currently has a combined schedular disability rating of 100%. R. at 3049. At all times relevant to this appeal, he has had a combined disability rating of at least 70%. *See id.*

In September 2012, the Circuit Court for the Sixteenth Judicial Circuit, Kane County, Illinois, appointed the appellant and his wife legal guardians of their then-minor grandson, whom this Court will refer to as "D.B." R. at 2059. The appointment authorized the appellant and his wife to have custody of D.B. and to "do all acts required of the guardian by law." *Id.*

In November 2012, the appellant submitted VA Form 21-686c, Declaration of Status of Dependents, listing D.B. as his stepchild in the section headed "unmarried children." R. at 2064-65. In the declaration, the appellant stated that he and his wife had been caring for their grandson "since he was in diapers." R. at 2065. The appellant also sought dependency benefits for his wife, who suffered from several disabilities.[2] *Id.*

In December 2013, a VA regional office (RO) granted entitlement to aid and attendance benefits for the appellant's wife. R. at 3171-72. In the January 2014 cover letter that accompanied the decision, the RO explained that VA "could[ not] pay for [D.B.] because he is your grandchild and not legally adopted," while "VA only recognizes biological children, stepchildren[,] or adopted children." R. at 1293, 3157. In a January 2015 Notice of Disagreement, the appellant asserted that the RO "erred in failing to consider" D.B. as his dependent. R. at 945.

---

[2] The appellant's wife passed away in November 2016. *See* Appellant's Brief (Br.) at 15.

In a July 2015 Statement of the Case, the RO continued to deny entitlement to a dependency allowance for D.B. on the grounds that the appellant had not legally adopted the child. R. at 567-98. In September 2015, the appellant filed a Substantive Appeal to the Board. R. at 428-76.

In May 2016, the Board issued the decision on appeal, finding that, as a matter of law, the appellant is not entitled to a dependency allowance because D.B. is not a "dependent child for VA purposes." R. at 13.

## II. ANALYSIS

### A. Pending Motions

On October 2, 2017, the appellant filed a motion for oral argument. On October 12, 2017, the Secretary filed his opposition to the appellant's motion.

Generally, oral argument will be held when the Court determines that it will "materially assist" the Court in resolving the issue before it. *Beaty v. Brown*, 6 Vet.App. 532, 539 (1994); *see Winslow v. Brown*, 8 Vet.App. 469, 471 (1996); *Mason v. Brown*, 8 Vet.App. 44, 59 (1995). Although the Court is sympathetic to our dissenting colleague's argument that the appellant has asked to be heard, *ante* at 10, it is contrary to precedent to hold oral argument where one will not materially assist the Court. *See Beaty*, 6 Vet.App. at 539. Here, the Court concludes that oral argument will not materially assist the Court in resolving the issue before it because the Court's decision is based on the plain language of section 1115. *Id.* The Court will therefore deny the appellant's motion for oral argument.

On October 20, 2017, the appellant filed a motion for panel review. The Court sua sponte referred this matter to a panel on March 22, 2018. Accordingly, the Court will dismiss the appellant's motion for panel review as moot.

### B. Law and Arguments

This case presents a matter of first impression for the Court, necessitating panel consideration. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990). Under 38 U.S.C. § 1115, VA "shall" pay to certain qualified veterans "additional compensation for dependents." The appellant contends that VA has not defined "dependents" and therefore the Court should rely on the plain meaning of the word. Appellant's Br. at 5. He argues that such plain meaning includes his grandson D.B., who has been "actual[ly] dependent" on the appellant and his wife since he was an infant and who became their legal charge in September 2012. *Id.* The Secretary counters that

the appellant fails to account for the fact that section 1115 specifies that "dependents" refers to a veteran's spouse, children, or parents, and that "child" is defined for VA purposes as

a person who is unmarried and—

(i) who is under the age of eighteen years;

(ii) who, before attaining the age of eighteen years, became permanently incapable of self-support; or

(iii) who, after attaining the age of eighteen years and until completion of education or training (but not after attaining the age of twenty-three years), is pursuing a course of instruction at an approved educational institution;

and who is a legitimate child, a legally adopted child, a stepchild who is a member of a veteran's household or was a member at the time of the veteran's death.

38 U.S.C. § 101(4)(A);[3, 4] *see* Secretary's Br. at 7-9.

### C. Statutory Interpretation

"When a statute is at issue, we begin with the statutory language." *McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *see Williams v. Taylor*, 529 U.S. 420, 431 (2000). "The statute's plain meaning is derived from its text and its structure." *McGee*, 511 F.3d at 1356; *see Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). The "plain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner*, 1 Vet.App. at 586-87 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see Roper v. Nicholson*, 20 Vet.App. 173, 180 (2006).

The first question in statutory interpretation is always "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end of the matter; for the

---

[3] The statute also defines "child" as the illegitimate child of a veteran under some circumstances. *See* 38 U.S.C. § 101(4)(A).

[4] The Court notes that D.B., who was born in 1996, is no longer a minor. In light of the disposition of this appeal, however, the Court need not decide whether that fact would preclude payment of a dependency allowance to the appellant. *Cf. Sucic v. Shulkin*, 29 Vet.App. 121, 125-26 (2017) (per curiam order); *Burris v. Principi*, 15 Vet.App. 348, 352-53 (2001).

court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. The interpretation of a statute is a question of law that the Court reviews de novo, without deference to the Board's interpretation. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc).

In the decision on appeal, the Board explained that "[a] veteran with service-connected disability rated at not less than 30[%] shall be entitled to additional compensation for a spouse and/or child." R. at 12 (citing 38 U.S.C. § 1115; 38 C.F.R. § 3.4(b)(2)). The Board stated that "child" has been defined "for the purposes of establishing dependency status" as, pertinent to this case, "a child legally adopted before the age of 18 years." *Id.*; *see* R. at 6 (citing 38 U.S.C. § 101(4)). The Board found that, because there is no dispute that the appellant has not adopted D.B., "the Board is bound by the law and is without authority to grant benefits." R. at 12.

Here, the "precise question at issue" under *Chevron*, 467 U.S. at 842, is "What does the term 'dependents' mean in section 1115?" Although "dependents" is neither specifically defined in section 1115 or its implementing regulation,[5] nor included in the list of statutory definitions that govern VA, *see generally* 38 U.S.C. § 101, the structure of section 1115 nevertheless makes clear that Congress specifically and unambiguously answered that question. The full text of section 1115 is:

> Any veteran entitled to compensation at the rates provided in section 1114 of this title, and whose disability is rated not less than 30[%], shall be entitled to additional compensation for *dependents* in the following monthly amounts:
>
> (1) If and while rated totally disabled and—
>
>> (A) has a *spouse* but no child, $150;
>>
>> (B) has a *spouse* and one or more *children*, $259 plus $75 for each *child* in excess of one;
>>
>> (C) has no spouse but one or more *children*, $101 plus $75 for each *child* in excess of one;
>>
>> (D) has a parent dependent upon such veteran for support, then, in addition to the above amounts, $120 for each parent so dependent;

---

[5] Section 1115's implementing regulation provides: "An additional amount of compensation may be payable for a spouse, child, and/or dependent parent where a veteran is entitled to compensation based on disability evaluated as 30[%] or more disabling." 38 C.F.R. § 3.4(b)(2) (2017).

(E) notwithstanding the other provisions of this paragraph, the monthly payable amount on account of a spouse who is (i) a patient in a nursing home or (ii) blind, or so nearly blind or significantly disabled as to need or require the regular aid and attendance of another person, shall be $286 for a totally disabled veteran and proportionate amounts for partially disabled veterans in accordance with paragraph (2) of this section; and

(F) notwithstanding the other provisions of this paragraph, the monthly amount payable on account of each *child* who has attained the age of eighteen years and who is pursuing a course of instruction at an approved educational institution shall be $240 for a totally disabled veteran and proportionate amounts for partially disabled veterans in accordance with paragraph (2) of this section.

(2) If and while rated partially disabled, but not less than 30[%], in an amount having the same ratio to the amount specified in paragraph (1) of this section as the degree of disability bears to total disability. The amounts payable under this paragraph, if not a multiple of $1, shall be rounded down to the nearest dollar.

38 U.S.C. § 1115 (emphases added).

The introductory paragraph of section 1115 explains generally that, under certain circumstances, veterans are entitled to additional compensation to help care for dependents. *See Sharp v. Shinseki*, 23 Vet.App. 267, 272 (2009) ("The purpose of the statute is [] clear: [T]o defray the costs of supporting the veteran's . . . dependents' when a service-connected disability is of a certain level hindering the veteran's employment abilities." (quoting S. REP. NO. 95-1054, at 19 (1978)). The subsections then specify how much additional compensation is payable and *for which dependents*. The subsections plainly limit the "dependents" identified in the introductory paragraph to spouses, children, and dependent parents.[6] Because the statute expressly identifies who is a "dependent" for its purposes, the Court need not—and, indeed, may not—accept the appellant's invitation to "adopt the ordinary dictionary meaning" of that term.[7] Appellant's Br. at 5; *see Chevron*, 467 U.S. at 842-43; *see also McGee*, 511 F.3d at 1356; *Sharp*, 23 Vet.App. at 271.

---

[6] Elsewhere, Congress has defined "dependent" in the same way for VA purposes. *See, e.g.*, 38 U.S.C. §§ 3452(d) ("The term 'dependent' means—(1) a child of an eligible veteran; (2) a dependent parent of an eligible veteran; and (3) the spouse of an eligible veteran."); 5313B(b)(3) ("The term 'dependent' means a spouse, surviving spouse, child, or dependent parent of a veteran.").

[7] Our dissenting colleague is correct that section 1115 "expressly included dependents," *ante* at 10, but he does not rely on a definition of that term within title 38 to conclude that the appellant's grandson qualifies as his dependent. We are, however, constrained not only by the plain language of the statute, but also by the statutory context. *See Gardner*, 1 Vet.App. at 586. As discussed above, the statute's inclusion of "dependents" is limited by its subsections outlining the individuals entitled to payment under its auspices.

"Dependents" in section 1115 includes the veteran's "child" or "children." As the Board noted and the Secretary asserts, Congress *has* defined "child" for VA purposes. *See* R. at 6, 12; Secretary's Br. at 7-8. Relevant to the issue on appeal, Congress has limited the term "child" to a minor "who is a legitimate child, a legally adopted child, [or] a stepchild who is a member of a veteran's household or was a member at the time of the veteran's death." 38 U.S.C. § 101(4)(A). Although our dissenting colleague asserts that this definition of "child" is "archaic and reflects a primitive understanding of dependency," *ante* at 11, the Court is not free to ignore the plain language of the statute even if the Court wishes the statute were otherwise. *See Chevron*, 467 U.S. at 842-43; *see also Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992) ("'[O]nly the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the "plain meaning" of the statutory language.'" (quoting *Garcia v. United States*, 469 U.S. 70, 75 (1984)). Moreover, the fact that Congress has defined "child" differently for Social Security Administration purposes, as our dissenting colleague points out, *see ante* at 10-11; 42 U.S.C. § 416(e), only supports the Court's reading of the plain language of sections 1115 and 101(4)—Congress knows how to include children such as the appellant's grandson in the definition of "child" but has not done so for VA purposes. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 384 (2013) (finding that Congress's use of explicit language limiting jurisdiction in one act "caution[ed] against" inferring a similar limitation in a different act); *Astrue v. Ratliff*, 560 U.S. 586, 594-95 (2010) (finding that differences between Social Security Act and Equal Access to Justice Act provisions reveal that "Congress knows how to make fees awards payable directly to attorneys where it desires to do so"); *Dep't of Housing and Urban Dev. v. Rucker*, 535 U.S. 125, 132 (2002) (comparing 21 U.S.C. § 881(a)(7) with 42 U.S.C. § 1437d(*l*)(6) and concluding that the differences between the statutes "shows that Congress knew exactly how to provide an 'innocent owner' defense" and did not do so in section 1437d(*l*)(6)).

The Board found, and the parties do not dispute, that, although the appellant was appointed the legal guardian of D.B., he has not adopted him. R. at 12. Because the law is plain, the Court concludes that the Board's determination that the appellant is not entitled to a dependency allowance for D.B. as a matter of law is correct. *See Butts*, 5 Vet.App. at 539. Whether excluding from section 1115 individuals over whom a veteran has guardianship is no longer logical, as our dissenting colleague suggests, is a policy question for Congress, not for this Court, and it is well settled that this Court is unable to provide equitable relief. *See Moffitt v. Brown*, 10 Vet.App. 214,

225 (1997) ("[T]his Court is not a court of equity and cannot provide equitable relief.") (citing *Harvey v. Brown*, 6 Vet.App. 416, 425 (1994)).

To the extent that the appellant alleges that the Board provided inadequate reasons or bases for its conclusion, *see* Appellant's Br. at 7, the appellant is not entitled to a dependency allowance for D.B. as a matter of law. Accordingly, any failure on the part of the Board to provide adequate reasons or bases is necessarily harmless. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he suffered prejudice as a result of VA error); *see also Kyhn v. Shinseki*, 23 Vet.App. 335, 343 (2010) (finding a reasons or bases error harmless where the appellant was not entitled to benefits as a matter of law), *vacated on other grounds*, 716 F.3d 572 (Fed. Cir. 2013).

Finally, because our holding is based on the plain language of section 1115, we need not address the appellant's arguments regarding the Secretary's interpretation of that statute in § 3.4. *See* Appellant's Br. at 10-12; *see also Chevron*, 467 U.S. at 842-43.

D. First Amendment Concerns

The appellant also argues that the definition of "dependents" relied upon by the Board— and now upheld by the Court—"place[s] a condition on the receipt of a government benefit: [A] veteran will only receive additional monthly compensation for dependents if his relationship with his dependent is a parent-child relationship in a nuclear family unit." Appellant's Br. at 14. He contends that such a requirement not only compels him "to spend money he does not have" to adopt D.B., "but also deprives him of the fundamental right to define the makeup of his own family." *Id.* at 16. The appellant argues that a statute that requires that a particular family unit be in place before benefits will be awarded violates his and D.B.'s (who would, under Illinois law, have to consent to being adopted) First Amendment "right of intimate association." *Id.* at 16-17. More specifically, the appellant posits, "a government benefit may not be conditioned in a way that penalizes the exercise of a fundamental right, such as the right of family association." *Id.* at 18 (citing *Mem'l Hosp. v. Maricopa County*, 415 U.S. 250, 257-58 (1974); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 640 (1974)).

The Secretary counters that "Congress's decision to limit the eligible parties for wh[om] a veteran c[an] receive dependency compensation does not restrict [the a]ppellant's ability to

structure his family any way h[e] wishes." Secretary's Br. at 13. Instead, he asserts, that decision "limits eligibility for compensation based on the interest of saving government resources and therefore has a rational basis." *Id.* The Secretary also argues that the appellant has not demonstrated that the "right of intimate association," Appellant's Br. at 17, is "a fundamental right," Secretary's Br. at 14.

Significantly, however, the appellant specifically "does not . . . ask the [C]ourt to find either or both [s]ection 101(4)(A) and [s]ection 1115 unconstitutional." Appellant's Br. at 23. Instead, he asks the Court to apply the doctrine of constitutional avoidance, which provides that, "'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided,' the [C]ourt's duty is to avoid the former and adopt the latter." *Id.* (quoting *United States ex rel. Attorney Gen. v. Del. & Hudson Co.*, 213 U.S. 366, 408 (1914)).

As is clear from the Court's discussion in Part II.C above, section 1115 is not "susceptible of two constructions." *Del. & Hudson Co.*, 213 U.S. at 408. The Court has determined that the plain language of section 1115 is unambiguous. Accordingly, the Court need not apply the doctrine of constitutional avoidance. Further, in the absence of an express constitutional challenge to section 1115, the Court will not address the matter further. *See Bucklinger v. Brown*, 5 Vet.App. 435, 440-41 (1993) ("It is '[a] fundamental and long-standing principle of judicial restraint . . . that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)).

## III. CONCLUSION

The appellant's October 2, 2017, motion for oral argument is denied. The appellant's October 20, 2017, motion for panel review is dismissed as moot. The appeal of the Board's May 11, 2016, decision dismissing the appellant's motions for revision of a December 1967 VA rating decision based on clear and unmistakable error and denying entitlement to an earlier effective date for the award of benefits for diabetes mellitus are DISMISSED. After consideration of the parties' pleadings and a review of the record, the Board's May 11, 2016, decision denying entitlement to dependency compensation for a dependent child based on legal guardianship is AFFIRMED.

9

GREENBERG, *Judge*, dissenting: I initially dissent from the majority's denial of the motion for oral argument. A worthy veteran has been wronged and has asked to be heard. Here, tenuous notions of judicial economy should not stifle the legitimate pleas of the very people we were created for and meant to serve.

I also dissent because I disagree with the majority's conclusion that the plain language of the legislative intent is "so apparent from the face of the statute that there be no question as to its meaning, [or] room for construction." 2A NORMAN SINGER & SHAMBIE SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.01 (5th ed. 1992) (SUTHERLAND). The majority's plain language analysis wrongly suggests that Congress intentionally excluded a certain group of dependents. This conclusion is not consistent with congressional intent in enacting Section 1115 "[t]o defray the *costs of supporting the veteran's or surviving spouse's dependents*." S. REP. NO. 95-1054, at 19 (1978) (emphasis added). We are dealing with actual *dependents* not abstract definitions. I would have given greater weight to the later statute, enacted in 1978, which expressly included *dependents*.

In September 2012, an Illinois State court appointed the appellant legal guardian of his grandson, requiring him to "do all acts required of the guardian by law." R. at 2059. Illinois State law requires the guardian of a minor child provide "custody, nurture and tuition" and "provide education of the ward." *See, e.g.*, 755 ILL. COMP. STAT. sec. 5/11-13(a). The appellant has borne the costs of raising his dependent grandchild.

A legal adoption in Illinois, on the other hand, involves a biological parent irrevocably surrendering every parental right or privilege, including any right to visitation or input to the child's upbringing, and any right to inherit from the child. *See, e.g.*, 750 ILL. COMP. STAT, sec. 50/11(a). Dependency costs are independent of parental rights and privileges.

Congress could not have intended to place such an irrelevant barrier in the way of a service-connected veteran from "defraying the cost of supporting [his] dependents." S. REP. NO. 95-1054, at 19 (1978). "It is clear that . . . the literal import of the text . . . leads to absurd results," 2A SUTHERLAND § 46.07, and the Court majority was wrong to construct an unintended wall between disabled veterans and their dependents. *See Conroy v. Aniskoff*, 507 U.S. 511, 514 (1993) (the statutory command here is "unambiguous, unequivocal, and unlimited").

The majority's holding implies that Congress meant to allow this veteran to receive additional dependency compensation for Social Security benefits because of his custody of his

grandson, but not to receive these benefits as a result of being rendered totally disabled by his service-connected disabilities. A "child" for Social Security purposes is defined in relevant part as "(3) a person who is the grandchild or stepgrandchild of an individual or his spouse, but only if (A) there is no natural or adoptive parent (other than such a parent who was under a disability, as defined in section 423(d) of this title))." 42 U.S.C. § 416(e). "Disability" under this statutory scheme means "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months."[8] 42 U.S.C. § 423(d)(1)(A).

While VA has applied the same definition of "child" provided by Congress in section 101(4)(A) since 1949, *compare* 38 C.F.R. § 4.14(c) (1949), *with* 38 C.F.R. § 5.2502(b) (1944 Supp.), could there be any legitimate reason for favoring a Social Security claimant over a disabled veteran? The language of section 101(4)(A) is archaic and reflects a primitive understanding of dependency. Applying the literal import of its text here would be absurd and "produce a result demonstrably at odds with the intention of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982). Proper interpretations of sections 1115 and 101(4)(A) must allow the appellant to receive reimbursement for dependency costs he has already accrued.

Finally, our jurisprudence must be more inclusive to properly discharge the essential duty of equity: to provide relief in light of diverse and infinite circumstances for which fixed laws cannot account. *Fiat justitia ruat caelum*. *See Rex v. Wilkes*, (1770) 98 Eng. Rep. 327 (K.B.) 347 (Lord Mansfield); 4 Burr. 2527, 2562; *see also Somerset v. Stewart*, (1772) 98 Eng. Rep. 499 (K.B.) 509; *Lofft* 1, 17. For a relevant description of general equitable principles, *see also Driscoll v. Burlington-Bristol Bridge Co.*, 8 N.J. 433, 499-500, 86 A.2d 201 (1952) ("[U]nder general principles of equity the court may require . . . so that as nearly as may be the parties will be protected and equity done."); *Hartman v. Hartle*, 95 N.J. Eq. 123, 125, 122 A. 615 (Ch. 1923); *Attorney Gen. v. Linden Cemetery Ass'n*, 85 N.J. Eq. 501, 506-07, 96 A. 1001 (E. & A.1916); 1 POMEROY, EQUITY JURISPRUDENCE (5th ed. 1941), § 237e; 2 RESTATEMENT (FIRST) OF TRUSTS (1935), § 291; *see generally* JOSEPH STORY, EQUITY JURISPRUDENCE (1st ed. 1836) ("Aequitas sequitur legem – Equity follows the law.")

---

[8] The appellant states that the grandson's "biological mother is permanently in a nursing home and unable to care for her son." Appellant's Br. at 2.

Congress and the Courts have tried from the beginning of the Republic to give positive effect to laws beneficial to veterans. *See Hayburn's Case*, 2 U.S. (2 Dall.) 409, 410 n., 1 L.Ed. 436 (1792) (Jay, C.J.) ("[T]he objects of [these statutes] are exceedingly benevolent, and do real honor to the humanity and justice of Congress."); *Marbury v. Madison*, 5 U.S. 137, 164, 2 L. Ed. 60, 69 (1803) (Marshall, C.J.) ("By the act concerning invalids, passed in June, 1794, vol. 3. p. 112, the secretary at war is ordered to place on the pension list, all persons whose names are contained in a report previously made by him to congress. If he should refuse to do so, would the wounded veteran be without remedy?"); *Decatur v. Paulding*, 39 U.S. 497 (1840) (Taney, C.J.); *United States v. Yale Todd* (1794) (unreported decision discussed in the margin of the opinion in *United States v. Ferreira*, 54 U.S. 40 (1851)) (acknowledging "the justice of [veterans'] claims and the meritorious character of the claimants"); *United States ex rel. Miller v. Raum*, 135 U.S. 200, 204 (1890) (Bradley, J.); *Johnson v. Robison*, 415 U.S. 361, 373-74) (1974) (Brennan, J.) ("We therefore conclude, in agreement . . . that a construction of [section] 211(a) that does not extend the prohibitions of that section to actions challenging the constitutionality of laws providing benefits for veterans is not only 'fairly possible' but is the most reasonable construction, for neither the text nor the scant legislative history of [section] 211(a) provides the 'clear and convincing' evidence of congressional intent required by this Court before a statute will be construed to restrict access to judicial review."); *Shinseki v. Sanders*, 556 U.S. 396, 416 (2009) (Souter, J, dissenting) ("Given Congress's understandable decision to place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions, I would not remove a comparable benefit in the Veteran's Court based on the ambiguous directive of § 7261(b)(2)."); *Henderson ex. rel. Henderson v. Shinseki*, 562 S. Ct. 428, 438 (2011) ("This case . . . involves review by an Article I tribunal as part of a unique administrative scheme. Instead of applying a categorical rule regarding review of administrative decisions, we attempt to ascertain Congress' intent regarding the particular type of review at issue in this case.)"; *Saunders v. Wilkie*, __ F.3d __, 2018 WL 1597914 (Fed. Cir. Apr. 3, 2018) (O'Malley, J.) (reversing the Court's interpretation of the statutory definition of "disability").

For these reasons, I dissent.